**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FELICIA M BROWN, | ) | CASE NO. 5:24-CV-00578-CEF |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Felicia Brown, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On August 5, 2021, Brown filed an application for DIB, alleging a disability onset date of January 1, 2019 and later amending her disability onset date to September 30, 2013. (ECF No. 6, PageID #: 56–57, 82). The application was denied initially and upon reconsideration, and Brown requested a hearing before an administrative law judge ("ALJ"). (ECF No. 6, PageID #: 92, 97, 101–02). On March 7, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 6, PageID #: 51, 53, 54). On April 19, 2023, the ALJ issued a written decision finding Brown was not disabled. (ECF No. 6,

1

PageID #: 42–46).  The ALJ's decision became final on February 1, 2024, when the Appeals

Council declined further review.  (ECF No. 6, PageID #: 25).

On March 28, 2024, Brown filed her Complaint to challenge the Commissioner's final

decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10, 11).

Brown asserts the following assignments of error:

> (1) The Administrative Law Judge erred, in violation of 20 CFR 404.1521, by
> finding that Ms. Brown suffers from no medically determinable impairment
> through her date last insured of June 30, 2015.

> (2) Ms. Brown is disabled and entitled to benefits under 20 CFR 404.1520.

(ECF No. 8 at 8, 12).

## III. Background

### A.  Relevant Hearing Testimony

At her hearing in front of the ALJ on March 7, 2023 (ECF No. 6, PageID #: 51), Ms. Brown

testified that beginning in 2013, she was unable to work due to the symptoms of her sleepiness

problems progressively worsening. (ECF No. 6, PageID #: 64). She testified that while she takes

medication for her sleep issues, and that medication helps her fall asleep less often, she still falls

asleep during the day. (ECF No. 6, PageID #: 64). She additionally testified that during the early

morning, if she takes her medicine, she is unlikely to fall asleep, but the likelihood that she falls

asleep, even after taking her medication, increases throughout the day. (ECF No. 6, PageID #:

65). Brown explained that in 2010 she was in a motor vehicle accident during which she hit her

head off the steering wheel and incurred several injuries including broken bones, lacerated

organs, and brain injuries. (ECF No. 6, PageID #: 67–68). Brown testified that a year after the

accident, she noticed something was wrong and was causing her to experience excessive daytime

sleepiness. (ECF No. 6, PageID #: 68). She contemporaneously stated that from 2013 to 2015 her

2

symptoms were not "super ba[d], but gradually it just seem[ed] like [she] wasn't able to do the things [she] normally could do." (ECF No. 6, PageID #: 69–70). Brown explained that these symptoms affected her ability to work, complete daily activities, and complete nursing school. (ECF No. 6, PageID #: 68–72). Brown also testified that she first sought treatment for her symptoms at the end of 2017. (ECF No. 6, PageID #: 73).

## B.  Relevant Medical Evidence

The earliest medical evidence in the record is from July 2017, over two years after Brown's date last insured, and this evidence does not appear to be related to Brown's issues with daytime fatigue. (ECF No. 6, PageID #: 751). In July of 2018, Brown began complaining of fatigue and exhaustion during the day. (ECF No. 6, PageID #: 381). She described these symptoms as "moderate in severity and worsening" and said the symptom onset was gradual and had begun months prior. (ECF No. 6, PageID #: 381). In June 2019, following her complaints of excessive daytime sleepiness and drowsy driving, Brown underwent a sleep study, the results of which showed that she had mild obstructive sleep apnea and idiopathic hypersomnia. (ECF No. 6, PageID #: 425–30, 525, 746). Later that same month, Brown reported having "irresistible problems with sleepiness" beginning "several years ago, not before" and reported that she had trouble staying awake while driving but had not had any accidents. (ECF No. 6, PageID #: 613). On July 5, 2019, Brown underwent another sleep study, the results of which indicated she suffered from severe hyper somnolence. (ECF No. 6, PageID #: 609–10). Brown's certified nurse practitioner within Cleveland Clinic's Sleep Disorders Center, Brittany McLaughlin, wrote that Brown had "idiopathic hypersomnia, probably due to prior head injury." (ECF No. 6, PageID #: 578). Despite taking medication for her symptoms, Brown reported worsening daytime sleepiness in 2021. (*See e.g.*, ECF No. 6, PageID #: 536). As of March 2022, Brown was

taking medications including Metadate and Ritalin daily, but she reported that despite taking these stimulants, she experienced excessive daytime sleepiness and reported that she could fall asleep immediately after taking these medications. (ECF No. 6, PageID #: 1209–10, 1211).

### C.  Opinion Evidence at Issue

In May 2020, nearly five years after Brown's date last insured, Brittany McLaughlin, a nurse practitioner within Cleveland Clinic's Sleep Disorders Center, found that Brown had idiopathic hypersomnia that was "probably due to prior head injury." (ECF No. 6, PageID #: 577–78). Brown asserts that this opinion, considered with the other medical evidence concerning the timeline of her symptoms post-collision "provides the post-expiration evidence needed to relate back [her] condition [to] prior to the expiration of her [date last insured]." (ECF No. 8 at 10).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. Through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c)).
>
> 4. The claimant was not under a disability, as defined in the Social Security Act, at any time from [September 30, 2013], the [amended] alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(c)).

(ECF No. 6, PageID #: 45).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r*

5

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Brown raises two issues on appeal. First, she argues that the ALJ erred in finding that she suffered from no medically determinable impairment through her date last insured. Second, she asserts that the ALJ's decision to deny her disability benefits is not supported by substantial evidence. Though in her second assignment of error, Brown merely argues that the ALJ erred in finding she was not disabled at step two and that her condition warrants an immediate award of benefits if the Court finds that the ALJ erred.

### 1. The ALJ properly found at step two that Brown was not under a disability through her date last insured.

"In order to establish entitlement to disability insurance benefits, [a claimant] must establish that [s]he became 'disabled' prior to the expiration of h[er] insured status." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). *See also Makris v. Comm'r of Soc. Sec.*, No. 4:20-CV-02245-DCN, 2021 WL 6617468, at *7 (N.D. Ohio Dec. 27, 2021) ("The claimant bears the burden to establish a disability existing before the expiration of insured status."); Social Security Ruling ("SSR") 18-1p ("[A] claimant who has applied for disability insurance benefits under title II of the Act must show that: He or she met the statutory definition of disability before his or her insured status expired . . . ."). "Therefore, only that medical evidence detailing the claimant's condition during the insured time period is relevant when establishing eligibility for DIB." *Makris*, 2021 WL 6617468, at *7 (citing *Forshee v. Comm'r of Soc. Sec.*, No. 11-CV-12339, 2012 WL 1672974, at *8 (E.D. Mich. Apr. 11, 2012), *report and recommendation adopted*, 2012 WL 1676645 (E.D. Mich. May 14, 2012)). "Evidence of disability obtained after the expiration

of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x

841, 845 (6th Cir. 2004) (citing *Cornette v. Sec'y of Health & Hum. Servs.,* 869 F.2d 260, 264 n.

6 (6th Cir.1988)). But post-expiration evidence may be considered if it "relate[s] back to the

claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc.*

*Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) (citing *King v. Sec'y of Health & Hum. Servs.*, 896

F.2d 204, 205–06 (6th Cir. 1990)).

Further, "[a]t Step Two of the sequential analysis, claimant has the burden of proving he

has a severe medically determinable impairment, in order to establish disability within the

meaning of the Act." *Dowey v. Comm'r of Soc. Sec.*, No. 5:17CV2489, 2018 WL 7681369, at *3

(N.D. Ohio Dec. 21, 2018) (citations omitted), *report and recommendation adopted sub*

*nom. Dowey v. Berryhill*, No. 5:17CV2489, 2019 WL 580570 (N.D. Ohio Feb. 12, 2019); *Higgs*

*v. Secretary,* 880 F.2d 860, 862–63 (6th Cir. 1988). The impairments "must result from

anatomical, physiological, or psychological abnormalities that can be shown by medically

acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. And thus, the

"impairment[s] must be established by objective medical evidence from an acceptable medical

source." *Id.* Objective medical evidence is that which provides medical signs or laboratory

findings.[1] SSR 16-3p. *See also* 20 C.F.R. § 404.1513(a)(1) ("Objective medical evidence is

medical signs, laboratory findings, or both, as defined in §404.1502(f).") ALJs "will not use [a

claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence

of . . . impairment(s)." 20 C.F.R. § 404.1521. An ALJ may terminate her evaluation of disability

---

[1] "*Signs* are anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms. *Laboratory findings* are anatomical, physiological, or psychological phenomena, which can be shown by the use of medically acceptable laboratory diagnostic techniques." SSR 16-3p (footnotes omitted).

at step two if a claimant does not meet her burden of proving she has an impairment or if the ALJ finds the claimant's impairment is not severe. *Dowey*, 2018 WL 7681369, at *3.

In the present case, the ALJ terminated her disability evaluation at step two after finding that Brown presented no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through her date last insured.

The ALJ explained her decision, writing:

> The Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings (20 CFR 404.1521 and 404.1529 and SSR 16-3p).
>
> No symptom or combinations of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process (SSR 16-3p).
>
> As amended, the onset date is September 30, 2013. Her date last insured is June 30, 2015. The earliest of the medical evidence included in the record dates to July 2017, more than two years after the date last insured (4F). For the period relevant to this claim, there is no medical evidence. In consequence, there can be no medically determinable impairment.

> Accordingly, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured.
>
> 4. The claimant was not under a disability, as defined in the Social Security Act, at any time from [September 30, 2013], the [amended] alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(c)).

(ECF No. 6, PageID #: 45)

Brown argues that the ALJ reached this decision, and thus ended her evaluation, in error. She asserts that the Sixth Circuit has found that "step two is a de minimis hurdle in the disability determination process" that is met if "there is some sort of objective medical record credibly suggesting that the claimant was significantly affected by . . . her impairments on or before the date last insured" and is only not met if the claim is "totally groundless." (ECF No. 8 at 9). Brown further asserts that the fact that the earliest medical evidence included in the record is from July 2017 alone is not determinative because post-expiration evidence that relates back to her condition prior to the expiration of her date last insured is relevant in determining whether she suffered from a severe medically determinable impairment. (ECF No. 8 at 9). She asserts that Nurse Practitioner McLaughlin's opinion that her idiopathic hypersomnia was "probably due to prior head injury," considered in light of the evidence showing the timeline of Brown's sleep problems after her motor vehicle accident, provides the type of post-expiration evidence necessary to relate her condition back to before her date last insured. (ECF No. 8 at 10). But, Brown argues, the ALJ failed to consider this evidence or "inquire into issues necessary for adequate development of the record," and such failure was harmful to Brown because if the ALJ had considered this evidence, she may have reached a different conclusion. (ECF No. 8 at 11). Finally, Brown asserts that an ALJ *should* have a duty to consider all evidence to determine if a claimant suffered from a severe impairment even if there is only medical evidence from after the

date last insured and further argues that the ALJ here failed to fulfill that duty because she considered no medical evidence from the record. (ECF No. 8 at 11).

The Commissioner argues that a claimant must show she was disabled on or before the expiration of the date last insured to be eligible for DIB. (ECF No. 10 at 4). The Commissioner notes that Brown does not dispute the fact that the certified administrative record contains no evidence from before 2017, meaning "there were no signs or laboratory findings to provide the required evidence of a medically determinable impairment prior to [Brown]'s date last insured." (ECF No. 10 at 5). The Commissioner further asserts that Brown does not argue that the ALJ overlooked medical evidence from before the date last insured or that there is additional medical evidence from before the date last insured that had not yet been considered. (ECF No. 10 at 6). Rather, the Commissioner asserts that Brown merely argues that the ALJ should have inferred she had a medically determinable impairment based on post-date last insured evidence and that the 2010 collision caused a brain injury that is linked to her sleepiness issues, which she reported to doctors in 2017, and, which eventually "led to the laboratory findings showing mild sleep apnea and an 'idiopathic' hypersomnia." (ECF No. 10 at 6). The Commissioner explains that Brown relies on her own testimony and a statement from Nurse Practitioner McLaughlin's treatment note that Brown's idiopathic hypersomnia was "probably due to prior head injury" and reasons that these two serve as "'objective' medical evidence to show she had a medically determinable impairment prior to her date last insured." (ECF No. 10 at 6). But, the Commissioner asserts, Brown "fatally" misunderstands the regulation that requires "objective evidence," for neither Brown's own testimony nor Ms. McLaughlin's brief statement "qualifies under the agency's definition of objective evidence because neither is a 'laboratory finding' or a 'sign.'" (ECF No. 10 at 6–7). And in fact, the Social Security Administration's regulations

10

specifically prohibit both from serving as evidence to prove a medically determinable impairment. (ECF No. 10 at 7).

The Court agrees with the Commissioner. As noted above, to qualify for DIB, a claimant must prove she was disabled prior to the expiration of her insured status. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). To establish disability, the claimant must prove she had a severe medically determinable impairment, which "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and thus "must be established by objective medical evidence from an acceptable medical source." *Dowey v. Comm'r of Soc. Sec.*, No. 5:17CV2489, 2018 WL 7681369, at *3 (N.D. Ohio Dec. 21, 2018) (citations omitted), *report and recommendation adopted sub nom. Dowey v. Berryhill*, No. 5:17CV2489, 2019 WL 580570 (N.D. Ohio Feb. 12, 2019); *Higgs v. Secretary,* 880 F.2d 860, 862–63 (6th Cir. 1988); 20 C.F.R. § 404.1521.

Here, Brown's amended disability onset date was September 30, 2013, and her date last insured was June 30, 2015. Thus, for the ALJ to consider Brown's sleep disorders as impairments qualifying her for disability, Brown needed to present objective medical evidence that she experienced these conditions between September 30, 2013 and June 30, 2015. As Brown herself acknowledges in her briefing, the record is devoid of any medical evidence from before July 2017, over two years after her insured status expired (*See* ECF No. 8 at 9).  True, as Brown argues, an ALJ may consider post-date last insured evidence when conducting her step-two analysis. *See Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). But the post-expiration evidence Brown points to—a statement made by Nurse Practitioner McLaughlin in a May 2020 treatment note that Brown's idiopathic hypersomnia was "probably due to prior head injury" in combination with her own statements regarding the timeline of her sleep condition

11

symptoms—is not the credible, objective medical evidence required to substantiate the existence of a medically determinable impairment through Brown's date last insured. Neither the nurse practitioner statement that Brown's idiopathic hypersomnia was "probably due to prior head injury," nor Brown's own statements about the onset and worsening of her sleep conditions are or provide laboratory findings or medical signs—which is how Social Security regulations define objective medical evidence. SSR 16-3p ("We call the medical evidence that provides signs or laboratory findings *objective medical evidence*. We must have objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms."). And Brown points to no law suggesting that a claimant may prove the existence of a medically determinable impairment by providing post-expiration evidence that does not qualify as the type of objective medical evidence required to prove a medically determinable impairment with pre-date last insured evidence. Additionally, the evidence offered by Brown to substantiate that she had a severe impairment prior to her insured status expiring consists of her own statements related to her symptoms worsening and her nurse practitioner's opinion that her conditions were "probably due to former head injury." The Social Security regulations, as described above, specifically state that ALJs will *not* use these types of evidence to establish the existence of a medically determinable impairment. 20 C.F.R. § 404.1521. Thus, the ALJ need not have considered this evidence during her step-two analysis, and her determination that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment is supported by substantial evidence.

In arguing that Ms. McLaughlin's opinion, considered alongside her own statements about the progression of her sleep symptoms following her collision, is the post-expiration

evidence necessary to relate back her sleep conditions to before her date last insured, and thus

that such evidence should have been considered and the record further developed by the ALJ,

Brown cites to *Price v. Chater*, No. 96-5092, 1996 U.S. App. LEXIS 34006 (6th Cir. Nov. 27,

1996) and *Carol P. v. O'Malley*, No. 23-0750-CDA, 2024 WL 415363 (D. Md. Feb. 2, 2024)

respectively. But the Court, finds that Brown's reliance on these cases is misplaced. This Circuit

has "repeatedly affirm[ed] that the claimant bears the ultimate burden of proving disability."

*Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008). Absent special

circumstances—like when a claimant appears without counsel, is incapable of presenting an

effective case, and is unfamiliar with the hearing procedures—an ALJ has no heightened duty to

develop the record. *Id. See also Staten v. Astrue*, No. 1:10–cv–864, 2011 WL 6950930, at *8

(S.D. Ohio Oct. 4, 2011) (holding that where plaintiff was represented by counsel and opted to

provide a deficient medical record, the ALJ was not required to develop the record for her).

Here, Brown was represented by counsel and nothing in the record indicates the ALJ had a

heightened duty to develop the medical record for her and no need to further inquire into the

subjective statements and nurse practitioner opinion that Brown gives to substantiate her

assertion that she had a medically determinable impairment before the expiration of her insured

status.

But, even if the ALJ was required to consider the nurse practitioner's opinion that

Brown's idiopathic hypersomnia was "probably due to prior head injury" her failure to do so is

harmless error. Despite Brown's assertion that *Price* supports her position, the Court finds it does

not. True, *Price* explains that a claimant may use post-expiration evidence to prove the existence

of a severe medically determinable impairment if the post-expiration evidence directly relates

back to the period before the expiration of the claimant's insured status. *See Price*, 1996 U.S.

App. LEXIS 34006, at \*5.  But a closer examination of the case proves fatal for Brown. In *Price*, the claimant attempted to prove that he became disabled before his insured status expired by offering his own testimony regarding his psychological disabilities and a report from a psychiatrist who evaluated him more than two and one-half years after his date last insured. *Id.* at \*3–6. Although the psychiatrist opined that the claimant experienced significant limitations in his ability to work at the time of evaluation, he was unable to unequivocally state that the claimant experienced these impairments at the time he left his employment and was unable to say exactly when the onset of the conditions from which the claimant suffered occurred. *Id.* at \*7. The court found that the psychiatrist was unable to provide medical evidence that the claimant was disabled prior to the expiration of his date last insured and found that the "report d[id] not relate back to [the] claimant's condition prior to the expiration of his insured status." *Id.* at \*7–8. Thus, there was "no objective medical evidence of any disabling medical condition to support claimant's complaints of disability before [his date last insured]," and the only evidence that could support claimant's claim was his own testimony, which is insufficient to prove a "'severe' impairment." *Id.*

Brown argues that the facts of her case are distinguishable from *Price* because her sleep disorders were diagnosed after a study and not from subjective reports of symptoms like psychological conditions are and because her sleep conditions were probably caused by a cognizable event. (ECF No. 11 at 2). Finally, Brown argues that Ms. McLaughlin's opinion that her idiopathic hypersomnia was "probably due to prior head injury" is different from the psychiatrist's report in *Price* because it "is causally connected and directly relates to Ms. Brown's medical impairments and symptoms prior to her date last insured, whereas the evaluator in *Price* could not confidently and directly relate the claimant's impairments to any specific point

14

in time." (ECF No. 11 at 2).

But the Court finds Brown's case is indeed very similar to *Price* and not distinguishable in the way Brown argues. While Brown asserts that Ms. McLaughlin's opinion directly relates to her impairments prior to her date last insured, like the psychiatrist's report in *Price*, this opinion came years after claimant's date last insured expired—almost five years here—and there is no language identifying a single event at which or date on which Brown sustained the head injury that may have caused these symptoms. Nor is there anything in Ms. McLaughlin's statement that Brown's idiopathic hypersomnia was "probably due to prior head injury" that suggests that Brown's symptoms began before June 30, 2015—Brown's date last insured—or that Brown experienced limitations that would affect her work before her date last insured passed. *See Roberts v. Comm'r of Soc. Sec.*, No. 3:22-CV-00051-CEH, 2023 WL 4243225, at \*8 (N.D. Ohio Jan. 23, 2023) (quoting *Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at \*3 (W.D. Ky. Sept. 29, 2008) ("[D]iagnosis does not equate with limitation; the existence of a diagnosis cannot establish disability.[ Rather,] the claimant bears the burden of pointing to functional limitations arising from that diagnosis[, limitations that prevent the performance of work activity].")) Additionally, like the psychiatrist in *Price* expressed uncertainty regarding the origin and onset of claimant's impairments, so too did Ms. McLaughlin—noting that Brown's impairments are "probably" related to prior head injury but providing no definitive statement that Brown's sleep disorders resulted from any head injury, let alone her 2010 accident, or further that her symptoms and limitations started before her insured status expired. Ms. McLaughlin's statement does not directly relate back to Brown's condition prior to the expiration of her insured status, and, thus, Brown was unable to provide any medical evidence that she was disabled prior to the expiration of her date last insured, leaving only her own statements regarding her symptoms, which do not

15

suffice to prove a medically determinable impairment. *See Price*, 1996 U.S. App. LEXIS 34006, at *7–8; 20 C.F.R. § 404.1521.

Therefore, even if the ALJ erred in not considering Ms. McLaughlin's statement, this error was harmless, as the statement does not directly relate back to Brown's condition or impairment status prior to the expiration of her insured status and thus should not be considered evidence of Brown's medically determinable impairments existing before her date last insured expired.

Because there is no objective medical evidence in the record showing that Brown suffered from a severe medically determinable impairment on or before her June 30, 2015 date last insured, Brown failed to meet her burden of proving that she had a severe impairment prior to the expiration of her insured status. Thus, the ALJ did not err in finding that Brown was not disabled at step two of her disability evaluation and was permitted to terminate her evaluation there. *See Dowey v. Comm'r of Soc. Sec.*, No. 5:17CV2489, 2018 WL 7681369, at *3 (N.D. Ohio Dec. 21, 2018) (citations omitted), *report and recommendation adopted sub nom. Dowey v. Berryhill*, No. 5:17CV2489, 2019 WL 580570 (N.D. Ohio Feb. 12, 2019).

2. **The ALJ's decision to deny Brown disability benefits at step two is supported by substantial evidence.**

For the reasons set forth above, the ALJ's decision to deny Brown disability benefits at step two is supported by substantial evidence. Because this Court finds that the ALJ properly determined that Brown did not meet her burden of proving a severe medically determinable impairment at step two, the ALJ need not have completed all five steps of her disability evaluation. Thus, the Court need not consider whether, if the ALJ had completed all five steps of the disability analysis, Brown would have been found disabled and entitled to disability benefits.

## VI. Recommendation

16

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Brown's

Statement of Errors and AFFIRM the Commissioner's decision.

Dated: November 7, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).